**John GRIFFIN, Plaintiff,**

v.

**BIRCH BROOK AGENCY, INC., et al., Defendants.**

**No. 89 Civ. 1708–CLB.**

United States District Court, S.D. New York.

Dec. 27, 1989.

Daniel S. Ronan, Bellerose, N.Y., for plaintiff.

Steven H. Gaines, Gaines & Kellman, White Plains, N.Y., for defendants.

## DECISION

### [Legal Fees]

BRIEANT, Chief Judge.

After a bench trial in which plaintiff was successful in enforcing his ERISA rights as a terminated employee of the Birch Brook Agency under its profit sharing plan, and also obtained the award of a statutory penalty against the administrators of the plan, plaintiff's attorneys now seek an award of counsel fees against the defendants. No papers were received in opposition to the fee application.

The plaintiff recovered $5,137.00 with interest since January 1988, to be added to his profit sharing plan account, and also recovered a statutory penalty of $16,-236.00, making the total recovery in the neighborhood of $22,000.00. For these efforts, his attorney of record seeks an award of counsel fees for himself and another lawyer who assisted in the prosecution of this litigation and companion state court litigation, in the amount of $37,-585.93.

This is based on a claimed lodestar of $30,068.75, to which plaintiff seeks to add a multiplier of 1.25 to the straight hourly time charges to compensate for the partially contingent nature of the retainer.

Mr. Griffin entered into a retainer agreement with the attorneys under date of March 14, 1989 to represent him in both the state and federal court actions against his former employers. The retainer agreement, which is attached to the affidavit filed December 18, 1989, called for an up front payment of $5,000.00, not refundable, to be credited against one-third of the gross amount recovered. This customary contingent fee arrangement makes clear its mathematical effect. It provides in relevant part as follows (paragraph 2):

"The $5,000.00 paid upon signing this agreement shall be credited against other monies recovered after judgment or settlement. Thus, if a judgment is entered for $15,000.00 our fee would be $5,000.00 ($15,000 × .333). Since you will have already paid $5,000.00, we would receive nothing additional."

The agreement expressly contemplated application to the Court for a fee which, if awarded, would be credited to the amounts due from the client.

The Court believes that an award of the lodestar in this case would be inadvisable and indeed inappropriate. The lodestar shows considerable time spent in chatter between the two attorneys and with the client, not likely to advance the cause. It also included an essentially unproductive cross motion for summary judgment and a lot of time said to have been expended on preparation for trial, preparation for depositions and attending to extensions of time.

It would be possible for the Court to make informed but largely arbitrary reductions in the time charges in order to eliminate apparently unproductive hours. This procedure does not seem practical for at least two reasons.

In the first place, the market value of the legal services rendered in this action have already been fixed by an arm's length contract at the customary one-third recovery, with $5,000.00 paid up front and not to be refunded. The amount of the recovery was

**144**

readily foreseeable at the inception of the case, and the agreement was fair to both parties. Obviously, payment of an attorney at a fair and customary, agreed amount determined by market conditions and the result of an arm's length contract, will fulfill all of the public policy considerations which Congress had in mind in providing for fee shifting. See *In re "Agent Orange" Product Liability Litigation,* 818 F.2d 226, 236 (2d Cir.1987).

Secondly, the Court should not overlook the punitive and coercive motivation behind this lawsuit, which clearly was commenced primarily to exact a statutory penalty and to provide a lever for the settlement of companion state court litigation between the parties arising out of the employment, or to make the defendants wish they had settled. To a certain extent, such punitive tactical litigation must have been contemplated by Congress. But it was certainly not the intent of Congress that the legal services expended on a grudge lawsuit should be paid for by the losing party in an amount which exceeds the market value of the same services determined by an arm's length retainer contract entered into between the plaintiff and his lawyers.

Accordingly, this Court concludes that a total fee of $8,000.00 to cover legal fees and disbursements, computed in accordance with the written retainer agreement which counsel had with their client, will be an adequate and sufficient legal fee to be paid by the defendants.

A judgment has been signed simultaneously herewith, which awards a legal fee in that amount.

No separate order is necessary.